IT IS HEREBY ADJUDGED and
DECREED this is SO ORDERED.

*The party obtaining this order is responsible
for noticing it pursuant to Local Rule 9022-1.*

Dated: March 28, 2013



*Randolph J. Haines*

**Randolph J. Haines, Chief Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re )<br>)<br>)<br>MORTGAGES LTD., )<br>)<br>Debtor. )<br>_____ )<br>)<br>MATTHEW HARTLEY, LIQUIDATING )<br>TRUSTEE OF THE ML LIQUIDATING )<br>TRUST, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CRAIG A FORTE AND LAURI T. )<br>FORTE, TRUSTEES OF THE FORTE )<br>FAMILY REVOCABLE LIVING )<br>TRUST, DATED MAY 30, 2011, )<br>)<br>Defendants. )<br>_____ ) | Chapter 11<br><br>CASE NO. 2:08-bk-07465-RJH<br><br><br><br><br><br>ADVERSARY NO. 2:10-ap-01095-RJH<br><br><br><br><br><br><br><br>MEMORANDUM DECISION<br>GRANTING MOTION TO DISMISS |

The Liquidating Trustee has sued the Fortes for an avoidable preference, and the Fortes have moved to dismiss. The threshold issue here is whether the confirmed plan of reorganization released the preference claim against the Fortes, or whether it adequately preserved that claim for assertion by the Liquidating Trust.

There is no dispute in this case that the Fortes had invested in the debtor's Revolving Opportunity program. There is also no dispute that their investment was fully redeemed, or repaid, within 90 days before the bankruptcy filing. There is also no dispute that the Fortes were not insiders. Assuming all the other preference elements could be satisfied

(including insolvency of the debtor on the date of the Fortes' redemption), this would ordinarily mean that the redemption payment could be recovered as an avoidable preference by the debtor, pursuant to Bankruptcy Code § 547. The question now is whether that preference action was properly reserved and assigned to the Liquidating Trustee, or whether instead it was released by the Plan.

Section 4.6 of the plan provided that "confirmation of the plan shall effectuate and approve the resolution of certain disputes and legal issues . . . including but not limited to . . . the resolution of Avoidance Actions as against . . . the Investors."[1] This was confirmed by the Disclosure Statement, which indicated that the Plan released Avoidance Actions against the Investors, except those who were insiders. And Exhibit 1 to the Plan described "Investors" as being all those investors who had received redemption payments, without any distinction between partial and full redemption or between those who retained claims as of the petition date and those who did not.

The Liquidating Trustee argues that the Plan did not release the preference action against the Fortes because, notwithstanding having indisputably invested money in the Debtor's investment program, they nonetheless did not fall within the Plan's definition of "Investor." This is because section 2.40 of the plan defined "investors" as those "Persons holding fractional or participating interests in the ML Loan or in the MP Funds," which were the two broad types of investment programs that the Debtor had operated before the bankruptcy. Although the Fortes had in fact invested in those programs, the Liquidating Trustee argues they did not satisfy that definition because they did not still "hold" those investments as of the petition date, because by that date their investment had been fully redeemed.

---

[1] "Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

2

Section 2.40 itself does not clarify that "holding" refers only to those investors who still held investments as of the petition date. The Ninth Circuit Bankruptcy Appellate Panel has held that a precise tense cannot be ascertained solely from the use of a so-called "present participle" as compared to a "past participle."[2] Consequently the use of the present participle "having" in the definition of "Investor" cannot alone be read as requiring a party to have a claim as of the petition date in order to qualify as an Investor.

Debtors argue that the requirement of retaining a claim as of the petition date in order to qualify as an "investor" is made explicit by section 3.6(k), which states: "Any potential Avoidance Action held by the Estate against the Revolving Opportunity Pass-Through Investors ***who have investments with the Debtor as of the Petition Dat****e* (except for such Claims by Insiders) shall be deemed settled and resolved on the Effective Date" (emphasis added).

The Fortes argue that more explicit provision does not apply to them because it is found in the section of the Plan dealing with Class 10B creditors who, in order to be creditors at all and yet subject to a potential avoidance action, would have to be investors who were only partially redeemed, but not wholly redeemed, during the preference period. A former investor who was fully redeemed, such as the Fortes, was no longer a creditor as of the petition date, and therefore not included in Class 10B.

In fact, the Fortes do not merely argue that the more explicit provision in section 3.6(k) does not apply to them. They go further and argue that that language actually implies, by negative implication, that the term "investor" must include those who had been fully redeemed. Unless an "investor" could include someone who had been fully redeemed, they argue, it would be redundant to limit the section 3.6(k) release to those who still held investments as of the petition date. Such a limitation in section 3.6(k) would not be necessary because such former investors would already have been excluded from the release simply

---

[2] *In re Waag*, 418 B.R. 373, 379 n.9 (9th Cir. BAP 2009)("The names present and past are misnomers, since either participle can occur in what is technically a present or past tense.").

3

because they were not "Investors" at all, according to the Plan's definition as the Liquidating Trustee now interprets it.

This same argument and analysis applies to the Plan's Exhibit 1, which was a non-exclusive list of specifically retained causes of action. It did not expressly identify any cause of action as being retained against the Fortes. It did state that causes of action were being retained for "$1.4 million paid to redemption recipients within 90 days prior to the Petition Date." The Trustee's response brief states that "Clearly, Defendants [Fortes] would have fallen into this $1,400,000." But similar to the argument based on the explicit language of section 3.6(k), this argument can also be turned against the Trustee, because this identification of certain retained causes of action appears on Plan Exhibit 1 under the caption "Investors who received redemptions." If the Fortes and others whose investments were fully redeemed fall into this class, this implies that they were nonetheless "Investors," despite not holding any claim or investment as of the petition date.

Finally, the Fortes also argue that they satisfied the Plan's definition of "Revolving Opportunity Investors," as found in section 2.81: "Revolving Opportunity Investors means the Investors that subscribed to and entered into the Revolving Opportunity Loan Program with the Debtor." That definition clearly included everyone who had ever so invested, regardless of whether that investment had been fully redeemed as of the petition date. That definition, which indisputably does apply to the Fortes, means that they are a kind of "investor" under the plan.

These three inconsistent uses of the term "Investor" to apparently include those who had been fully redeemed necessarily imply that interpreting the present participle "having" in Plan section 2.4 as limited to those who still had investments outstanding as of the petition date is too much weight for that single word to carry.

That interpretation is also not consistent with the plain language meaning of the term. If someone who had been an investor had occasion to read the Plan's release language in section 4.6, which states that confirmation of the plan resolves all legal disputes with "the

4

Investors," that person would not ordinarily conclude he was excluded from that provision simply because his investment had been fully repaid.

The Fortes argument is further strengthened by the Plan's exhibit 1, which listed retained causes of action against 298 named entities and individuals, which did not include the Fortes. And it is undisputed that the plan proponent knew that it intended to retain causes of action against seven (7) former investors who had been fully redeemed, and knew that the Fortes were the largest single such former investor. The plan proponent even produced testimony from Ed McDonough at the confirmation hearing to that effect, except that it did not identify Fortes by name. The Trustee has failed to make any plausible argument why the plan proponent failed to identify the million dollar claim against the Fortes on Exhibit 1.

Because a fair interpretation of the Plan's release language appears to include the Fortes, and because there was a specific listing of retained causes of action against 298 individuals and entities that did not include the Fortes (who were apparently known to the plan proponent at the time), res judicata, equitable estoppel and/or judicial estoppel preclude the Liquidating Trustee from pursuing these causes of action now.[3]

This is particularly important when the plan proponent is the investor's committee. There seems to be an inherent lack of equity in releasing all claims against investors who, still having claims, are represented by the committee and the plan proponent, while retaining similar claims against former investors who were fully redeemed. At a minimum, if there is to be that apparently unjustified disparate treatment of investors, it is incumbent on the plan proponent to make it very clear and explicit, as well perhaps as a justification for it. Although neither the "unfair discrimination" provision of Code § 1129(b)(1) nor the "same treatment" requirement of Code § 1123(a)(4) applies to potential adversary defendants who are not creditors, "the 'overriding consideration' in bankruptcy is

---

[3]*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001)(judicial estoppel); *In re Kelly*, 199 B.R. 698 (9th Cir. BAP 1996)(res judicata).

5

that 'equitable principles govern,'" and "equity is equality."[4]  If there is some equitable reason why investors whose interests are represented by the committee should be treated better than former investors whose interests were not so represented, the rationale should be made abundantly clear in the plan and disclosure statement.  Otherwise the court and all parties in interest should assume that similarly situated parties are treated similarly.

          Consequently the motion to dismiss is granted.  Defendant's counsel is requested to upload an appropriate form of final judgment.

          DATED AND SIGNED ABOVE

---

[4] *In re Tucson Yellow Cab Co., Inc.,* 789 F.2d 701, 704 (9th Cir. 1986).

Case 2:10-ap-01095-RJH    Doc 71    Filed 03/28/13    Entered 03/28/13 09:06:49    Desc
Main Document - Notice of Filing    Page 6 of 6